JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
GRETCHEN FRIEDBERGER

**DEFENDANTS**
SIGNANT HEALTH

**(b)** County of Residence of First Listed Plaintiff   CHESTER
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   WAYNE
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Lane J. Schiff , Esquire
Console Mattiacci Law LLC, 1525 Locust Street, 9th Floor
Philadelphia, PA 19102 215-545-7676

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|   | PTF | DEF |   | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | | | ☐ 790 Other Labor Litigation | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 791 Employee Retirement Income Security Act | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| | | | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. §2000e, et seq. ("Title VII"); 43 P.S. §951, et seq. ("PHRA").
Brief description of cause:
Plaintiff brings this action against her former employer for sex discrimination and hostile work environment.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $ excess of $75,000

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE
May 28, 2021

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ Coatesville, PA _____

Address of Defendant: _____ 575 East Swedesford, PA, Suite 200, Wayne, PA 19087 _____

Place of Accident, Incident or Transaction: _____

---

**RELATED CASE, IF ANY:**

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes ☐  No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes ☐  No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes ☐  No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes ☐  No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 5/28/21 _____ _____ 314179 _____

*Attorney-at-Law / Pro Se Plaintiff*                     *Attorney I.D. # (if applicable)*

---

**CIVIL:** (Place a √ in one category only)

| A. | Federal Question Cases: | B. | Diversity Jurisdiction Cases: |
|---|---|---|---|
| ☐ 1. | Indemnity Contract, Marine Contract, and All Other Contracts | ☐ 1. | Insurance Contract and Other Contracts |
| ☐ 2. | FELA | ☐ 2. | Airplane Personal Injury |
| ☐ 3. | Jones Act-Personal Injury | ☐ 3. | Assault, Defamation |
| ☐ 4. | Antitrust | ☐ 4. | Marine Personal Injury |
| ☐ 5. | Patent | ☐ 5. | Motor Vehicle Personal Injury |
| ☐ 6. | Labor-Management Relations | ☐ 6. | Other Personal Injury *(Please specify):* _____ |
| ☑ 7. | Civil Rights | ☐ 7. | Products Liability |
| ☐ 8. | Habeas Corpus | ☐ 8. | Products Liability – Asbestos |
| ☐ 9. | Securities Act(s) Cases | ☐ 9. | All other Diversity Cases |
| ☐ 10. | Social Security Review Cases | | *(Please specify):* _____ |
| ☐ 11. | All other Federal Question Cases *(Please specify):* _____ | | |

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____ Lane J. Schiff, Esquire _____, counsel of record *or* pro se plaintiff, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: 5/28/21 _____ _____ 314179 _____

*Attorney-at-Law / Pro Se Plaintiff*                     *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| GRETCHEN FRIEDBERGER | : | CIVIL ACTION |
| PLAINTIFF, | : | |
| v. | : | |
| SIGNANT HEALTH | : | |
| | : | NO. |
| DEFENDANT. | : | |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.          ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.               ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                        ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court. (See reverse side of this form for a detailed explanation of special
    management cases.)                                                           ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.   ( X)

May 28, 2021

| | | |
|---|---|---|
| Date | Attorney-at-law | **Plaintiff, Gretchen Friedberger**<br>**Attorney for** |
| (215) 545-7676 | (215) 565-2859 | schiff@consolelaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

**IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA**

—————————————————————— :
                                                 :

**GRETCHEN FRIEDBERGER** :
**Coatesville, PA 19320** :
                                             :       **CIVIL ACTION NO.**
                 **Plaintiff,** :
                                                 :
                   **v.** :        **JURY TRIAL DEMANDED**
                                                 :

**SIGNANT HEALTH** :
**575 East Swedesford Road, Suite 200** :
**Wayne, PA 19087** :
                              **Defendant.** :
—————————————————————— :

## COMPLAINT

### I. INTRODUCTION

Plaintiff, Gretchen Friedberger, brings this action against her former employer, Signant Heath, as a result of the invidious sex discrimination and hostile work environment to which she was subjected. Defendant's discriminatory conduct violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.* ("Title VII"), and the Pennsylvania Human Relations Act, as amended, 43 P.S. §951, *et seq.* ("PHRA"). Plaintiff seeks all damages, including economic loss, compensatory damages, punitive damages, attorneys' fees and costs, and all other relief this Court deems appropriate.

### II. PARTIES

1.      Plaintiff, Gretchen Friedberger, is a female individual, residing in Coatesville, Pennsylvania.

2.      Defendant Signant Health ("Defendant") is a corporation, maintaining a place of business located 575 East Swedesford Road, Suite 200, Wayne, PA 19087.

3.      At all times material hereto, Defendant acted by and through their authorized

agents, servants, workmen, and/or employees acting within the course and scope of their employment with Defendant and in furtherance of Defendant's business.

4.      At all times material hereto, Defendant acted as an employer of Plaintiff within the meaning of the statutes that form the basis of this matter.

5.      At all times material hereto, Plaintiff was an employee of Defendant within the meaning of the statutes that form the basis of this matter.

### III.   **JURISDICTION AND VENUE**

6.      The causes of action that form the basis of this matter arise under Title VII and the PHRA.

7.      The District Court has jurisdiction over Count I (Title VII) pursuant to 28 U.S.C. §1331.

8.      The District Court has supplemental jurisdiction over Count II (PHRA) pursuant to 28 U.S.C. §1367.

9.      Venue is proper in the District Court under 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claim occurred within this District.

10.     On or about July 24, 2019 Plaintiff filed a Complaint with the Pennsylvania Human Relations Commission ("PHRC"), complaining of acts of discrimination and harassment alleged herein. This complaint was cross-filed with the Equal Employment Opportunity Commission ("EEOC").  Attached hereto, incorporated herein and marked as "Exhibit A" is a true and correct copy of the PHRC Complaint (with personal identifying information redacted).[1]

11.     On or about March 3, 2021, the EEOC issued to Plaintiff a Notice of Right to Sue.

---

[1]On or about July 29, 2020, Plaintiff filed a Second Complaint with the PHRC, which was cross-filed with the EEOC. Plaintiff plans to amend this Complaint to add additional causes of action under the PHRA and Title VII, and a claim under the Americans with Disabilities Act, as amended, 42 U.S.C. §12101, *et seq.* ("ADA").

Attached hereto, incorporated herein and marked as "Exhibit B" is a true and correct copy of that notice.

12.    Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

### IV.    FACTUAL ALLEGATIONS

13.    Plaintiff commenced her employment with Defendant on or about June 3, 2013.

14.    Plaintiff was employed as a Clinical Data Manager and consistently performed her job duties in an excellent manner.

15.    Shortly after Plaintiff commenced employment, Antonio Hernandez (male), Clinical Lead, sexually assaulted Plaintiff.

16.    Hernandez put his hands on Plaintiff's legs, knees, and upper thigh.  Plaintiff rejected his advances and pushed his hands away from her.

17.    Hernandez thereafter slid his hands up and down Plaintiff's back, stomach, and the sides of her body.  Plaintiff continued to push his hands away from her.

18.    Hernandez forcefully reached his hand between Plaintiff's legs and grabbed Plaintiff's vagina.  Plaintiff immediately elbowed Hernandez away, turned around, told him to stop, and walked away from him.  Hernandez followed Plaintiff until she reached a more crowded area.

19.    Hernandez thereafter again put his hands on Plaintiff's legs. Plaintiff again pushed him away.

20.    Plaintiff subsequently complained of sex discrimination to her then supervisor, Sharon Gaughan, then Senior Clinical Manager, regarding Hernandez' conduct.

21.    Defendant failed to take appropriate corrective and remedial action in response to

3

Plaintiff's complaint.  No investigation was conducted, and Hernandez remained employed with Defendant.

22.     After Plaintiff's initial complaint, Plaintiff's next Supervisor, Cynthia McNamara, Director, Client Services, overheard Plaintiff telling another employee that Hernandez had previously sexually assaulted her.

23.     McNamara told Plaintiff that she was required to go to Human Resources with the information and that it was unfortunate that Plaintiff did not tell her supervisor at the time of the incident.  Plaintiff stated that she had complained to her supervisor, Gaughan, following the sexual assault by Hernandez.

24.     Following McNamara's direction, Plaintiff thereafter complained to Mary Ann Flasinsky, Head of Human Resources, regarding Hernandez' unlawful behavior.

25.     Plaintiff additionally complained that multiple female employees told Plaintiff that Hernandez had engaged in unwanted sex-based conduct towards them, and that she was afraid Hernandez would continue to engage in unlawful behavior towards women.

26.     Plaintiff informed Flasinsky that she wanted her complaints written down so that if Hernandez acted unlawfully towards any female employees in the future there would be a written record.

27.     Defendant failed to take appropriate remedial and corrective action in response to Plaintiff's complaint.  No investigation was conducted, and Hernandez remained employed with Defendant.

28.     In or about May 2018, Plaintiff complained to Clinton Creasy, Executive Director, Legal and Regulatory Affairs of sex discrimination in connection with Hernandez' conduct.  Creasy instructed Plaintiff to speak with Teresa Ford, Senior Human Resources

Generalist.

29.     Plaintiff thereafter complained to Ford of sex discrimination in connection with Hernandez' conduct.

30.     Ford informed Plaintiff that, despite Plaintiff's previous request to document her complaint, no documentation existed in Plaintiff's file referencing her prior complaints about Hernandez and that Defendant additionally had no record of any complaints made against Hernandez.

31.     On or about May 1, 2018, Plaintiff began reporting to Keith Aumiller (male), Director, Technical Delivery.

32.     Aumiller subjected Plaintiff to sex-based discrimination and a hostile work environment.

33.     Aumiller treated Plaintiff in a more hostile and dismissive manner than he treated male employees.

34.     Aumiller ignored and excluded Plaintiff from work activities.   Aumiller additionally deferred to and recognized the input of male employees over Plaintiff.

35.     Aumiller provided greater assistance to male employees than he provided to Plaintiff.

36.     Aumiller assigned increased job duties and responsibilities to Joseph McCusker (male), Project Manager, Technical Delivery.  Plaintiff was more qualified and experienced to handle increased job duties and responsibilities than McCusker.

37.     Aumiller referred to Plaintiff as a "chic."

38.     Aumiller inquired as to whether Plaintiff had read the book "Nice Girls Don't Get the Corner Office?"  because he believed it applied to her.

39.     Aumiller told Plaintiff on multiple occasions that she had an attitude.

40.     Aumiller told Plaintiff on multiple occasions that she needed to keep her mouth shut.

41.     Aumiller stated to Plaintiff that every man he has known who dated a Puerto Rican woman has been attacked by that woman with a knife.

42.     In or about December 2018, Defendant failed to promote Plaintiff to Associate Director.  Defendant instead promoted McCusker.

43.     Plaintiff was more qualified and experienced for the Associate Director position than McCusker.

44.     In or about January 2019, Plaintiff was excluded from the interviewing and hiring process of an employee who was assigned to report to Plaintiff.  Plaintiff received no explanation as to why she was excluded from the interviewing and hiring process for her direct report.

45.     In or about February 2019, Aumiller instructed Plaintiff to take over managing an additional team, since Christopher Dunn (male), Director of Data Sciences, had resigned.

46.     Plaintiff remarked to Aumiller that Dunn had been paid substantially more than she despite her new increased job duties and responsibilities.  Aumiller became visibly angry, and increasingly hostile and aggressive toward Plaintiff.

47.     Aumiller threatened that Plaintiff better watch what she said and unjustly criticized her performance.  Aumiller stated that Plaintiff's position was too much for Plaintiff and threatened that he had demoted people in the past.

48.     Numerous coworkers have told Plaintiff that they believe that Aumiller treats her less favorably because she is a woman and/or that Aumiller discriminates against women, including without limitation, Jonathen Rajabi, Clinical Data Management SQL Programmer,

Jeffery Taylor, Clinical Data Manager, Jordan Mark Barbone, Clinical Data Scientist, Elizabeth Renne, Project Manager, Marie Boursiquot, Clinical Data Manager, Holly Gratkowski, Director, Client Services, and Alexanda Botezatu, Associate Director Clinical Data Management.

49.     On or about February 8, 2019, Plaintiff complained to Colleen Meanix, Associate Director of Human Resources, of sex discrimination regarding Aumiller's conduct.

50.     On or about February 12, 2019, Plaintiff filed an internal sex discrimination complaint against Aumiller with Ford.

51.     Plaintiff followed-up with Ford on multiple occasions seeking an update regarding her complaint but received no substantive response.

52.     On or about March 5, 2019, Ford informed Plaintiff that she had not yet started her investigation into Plaintiff's complaint and that Milissa Ronayne, Director, Management Development and Tools, would be handling Plaintiff's complaint going forward.

53.     On or about March 19, 2019, Plaintiff contacted Ronayne for an update regarding her complaint.  Ronayne stated that John T. Clements, Senior Human Resources Generalist, would be handling Plaintiff's complaint going forward.

54.     On numerous occasions thereafter, Plaintiff contacted Clements regarding the status of her complaint.  Clements responded that he had been busy and had not yet looked at Plaintiff's complaint or investigated Plaintiff's allegations.

55.     Plaintiff complained to Clements that she was continuing to be discriminated against by Aumiller.

56.     Defendant failed to take appropriate remedial and corrective action in response to Plaintiff's complaint.

57.     Aumiller continued to subject Plaintiff to sex discrimination and a hostile work

environment.

58.     As a result of the sex discrimination to which Plaintiff was subjected, Plaintiff took a medical leave of absence beginning on or about May 10, 2019.

59.     Plaintiff has not received any further communication from Defendant regarding her sex discrimination complaints.

60.     Plaintiff was never informed of the result of any alleged investigation into her complaints.

61.     Defendant has an underrepresentation of female employees in high-level positions.

62.     Defendant's Scientific Leadership is comprised of eight (8) male employees and one (1) female employee.

63.     Defendant's Corporate Leadership is comprised of eight (8) male employees and four (4) female employees.

64.     Plaintiff's sex was a determinative and motivating factor in the discriminatory treatment outlined herein, including, without limitation, failing to promote her in or about December of 2018 to the position of Associate Director and subjecting her to a hostile work environment.

65.     Defendant failed to prevent or address the discriminatory conduct referred to herein and further failed to take corrective and/or remedial measures to make the workplace free of discriminatory conduct.

66.     Plaintiff was subjected to severe and/or pervasive conduct that interfered with her ability to perform her job duties and was not welcomed by Plaintiff, thereby creating a hostile work environment.

67.     The conduct to which Plaintiff was subjected was so severe and/or pervasive that a reasonable person in Plaintiff's position would find the work environment to be hostile and/or abusive.

68.     Plaintiff's sex was a motivating and determinative factor in the hostile work environment to which she was subjected.

69.     As a direct and proximate result of the discriminatory conduct of Defendant, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures.

70.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of the unlawful behavior complained of herein unless and until this Court grants the relief requested herein.

## COUNT I – TITLE VII

71.     Plaintiff incorporates herein by reference the above paragraphs as if set forth herein in their entirety.

72.     By committing the foregoing acts of discrimination against Plaintiff, Defendant violated Title VII.

73.     Defendant acted willfully and intentionally and with malice and/or reckless indifference to Plaintiff's protected rights, thereby warranting the imposition of punitive damages.

74.     As a direct and proximate result of Defendant's violation of Title VII, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

75.     Plaintiff is now suffering and will continue to suffer irreparable injury and

monetary damages as a result of Defendant's discriminatory acts unless and until this Court grants the relief requested herein.

76.     No previous application has been made for the relief requested herein.

## COUNT II – PHRA

77.     Plaintiff incorporates herein by reference the above paragraphs as if set forth herein in their entirety.

78.     By committing the foregoing acts of discrimination, Defendant violated the PHRA.

79.     As a direct and proximate result of Defendant's violation of the PHRA, Plaintiff has sustained the injuries, damages, and losses set forth herein and has incurred attorneys' fees and costs.

80.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory acts unless and until this Court grants the relief requested herein.

81.     No previous application has been made for the relief requested herein.

## RELIEF

WHEREFORE, Plaintiff seeks damages and legal and equitable relief in connection with Defendant's unlawful conduct, and specifically prays that this Court grant the following relief to Plaintiff by:

(a) declaring the acts and practices complained of herein to be in violation of Title VII;

(b) declaring the acts and practices complained of herein to be in violation of the PHRA;

(c) enjoining and permanently restraining the violations alleged herein;

(d) entering judgment against Defendant and in favor of Plaintiff in an amount to be

determined;

(e) awarding damages to make Plaintiff whole for all lost earnings, earning capacity and benefits, past and future, which Plaintiff has suffered or may suffer as a result of Defendant's unlawful conduct;

(f) awarding back pay and front pay;

(g) awarding compensatory damages to Plaintiff for past and future pain and suffering, emotional upset, mental anguish, humiliation, and loss of life's pleasures, which Plaintiff has suffered or may suffer as a result of Defendant's unlawful conduct;

(h) awarding punitive damages to Plaintiff;

(i) awarding Plaintiff such other damages and relief as is appropriate under Title VII and the PHRA;

(j) awarding Plaintiff the costs of suit, expert fees and other disbursements, and attorneys' fees; and

(k) granting such other and further relief as this Court may deem just, proper, or equitable including other equitable and injunctive relief providing restitution for past violations and preventing future violations.

**CONSOLE MATTIACCI LAW, LLC**

Dated: May 28, 2021      By:      _____

Lane J, Schiff, Esquire
1525 Locust St., 9th Floor
Philadelphia, PA 19102
(215) 545-7676

Attorney for Plaintiff,
Gretchen Friedberger

11

# EXHIBIT A

**Received**

JUL 2 4 2019

PA Human Relations Commission
Philadelphia Regional Office

COMMONWEALTH OF PENNSYLVANIA
GOVERNOR'S OFFICE
PENNSYLVANIA HUMAN RELATIONS COMMISSION

## COMPLAINT

COMPLAINANT:                          :

**GRETCHEN FRIEDBERGER**              :        Docket No. 201901981

v.                                    :

RESPONDENT:                           :

**SIGNANT HEALTH**                    :

1.  The Complainant herein is:

    Name:        Gretchen Friedberger

    Address:     **REDACTED**
                 Coatesville, PA 19320

2.  The Respondent herein is:

    Names:       Signant Health

    Address:     575 East Swedesford Road, Suite 200
                 Wayne, PA 19087

3.  I, Gretchen Friedberger, the Complainant herein, allege that I was subjected to unlawful

discrimination because of my sex (female), including sexual assault, as set forth below:

### Discrimination

#### A. I specifically allege:

[1]     I was hired by Respondent's predecessor on or about June 3, 2013.

[2]     I am a current employee of Respondent.

[3]     I consistently perform my job duties in a highly competent manner and receive positive performance reviews.

[4]     I hold the position of Clinical Data Manager.

[5]     I report to Keith Aumiller (male), Director, Technical Delivery. Aumiller reports to James Jay (male), Senior Vice President and General Manager, Endpoint Solutions. Jay reports to Michael Nolte (male), Chief Executive Officer.

[6]     Since on or about June 28, 2013, I have been in a continuing hostile work environment based on my sex.

[7]     On June 28, 2013, during a work event in Philadelphia, Antonio Hernandez (male), Clinical Lead, engaged in conduct of a sexual nature toward me. He repeatedly put his hands on my legs, knees, and upper thigh. I rejected his advances and pushed his hands away from me. Later, when I was talking with Timothy Pittman (male), Project Specialist, Client Services, Hernandez slid his hands up and down my back, my stomach, and the sides of my body. I continued to push his hands away from me. Hernandez then, from behind me, forcefully reached his hand between my legs and grabbed my vagina. I immediately elbowed him to push him away from me, turned around, told him to stop, and walked away from him. Hernandez followed me until I reached a more crowded area and was able to leave the work event.

[8]     Hernandez sexually assaulted me.

[9]     On or about July 1, 2013, I complained of sex discrimination to my supervisor at the time, Sharon Gaughan (female), then Senior Clinical Manager. I complained that Hernandez sexually assaulted me. I complained that Hernandez grabbed me between my legs, and that I elbowed him, told him to stop, and walked away. I complained that he followed

me, and I tried to get away from him. Gaughan responded by shrugging and acting only mildly surprised.

[10]     Respondent, to my knowledge, failed to investigate my sex discrimination, including sexual assault, complaint.

[11]     Respondent failed to remedy or prevent the sex discrimination, including sexual assault, to which I have been subjected.

[12]     **REDACTED** (female), then Project Specialist, Client Services, told me that Hernandez also subjected her to conduct that made her feel uncomfortable.

[13]     I told **REDACTED** of the sexual assault to which Hernandez subjected me, and told her that she could share this information with Human Resources when she went to complain of Hernandez's conduct toward her.

[14]     **REDACTED** told me that she complained and provided a statement to MaryAnn Flasinski (female), Head of Human Resources, regarding Hernandez.

[15]     I was never contacted in connection with any investigation following **REDACTED** complaint.

[16]     Hernandez remained employed with Respondent.

[17]     On or about September 22, 2014, during a business trip, I told Kathryn Watson (female), Project Manager, that Hernandez had sexually assaulted me the year before. My supervisor at the time, Cynthia McNamara (female), Director, Client Services, overheard me talking with Watson, and requested to speak with me following the business trip.

[18]     McNamara told me that she was required to go to Human Resources with the information that she heard me discussing with Watson. She stated that it was unfortunate that I did not tell my supervisor at the time of the incident. My supervisor at the time, Gaughan,

had reported to McNamara at the time of my sexual assault. I stated that I had complained to my supervisor, Gaughan, following the sexual assault by Hernandez. McNamara did not respond.

[19]     Respondent failed to remedy or prevent the sex discrimination, including sexual assault, to which I have been subjected.

[20]     On October 8, 2014, I met with Flasinski and complained that Hernandez had sexually assaulted me, and provided her with details. I complained that I was aware that Hernandez had been inappropriate with other female employees in the past, based on conversations I had with these female employees, and that I was afraid he would do the same thing again. I stated that I wanted my complaints written down and on record so that if Hernandez did anything to any female employees again, it would be in writing that this was a recurring issue.

[21]     Respondent, to my knowledge, failed to investigate my sex discrimination, including sexual assault, complaints.

[22]     Respondent failed to remedy or prevent the sex discrimination, including sexual assault, to which I have been subjected.

[23]     Hernandez remained employed with Respondent.

[24]     It was very upsetting to me to complain of sex discrimination, including sexual assault, and it was very upsetting to me to have no one at Respondent provide me with an update or finding related to my complaints.

[25]     It was very upsetting to me that Respondent took no action in response to my sex discrimination, including sexual assault, complaints, and that Hernandez remained employed at Respondent.

[26]      Every day, going to work at Respondent, I was faced with the upsetting reality that I had complained of sex discrimination, including sexual assault, and Respondent took no action to investigate, remedy, or prevent the sex discrimination, including sexual assault, to which I was subjected at Respondent.

[27]      On May 24, 2018, I was told that Hernandez filed a race discrimination complaint against Respondent.

[28]      On May 24, 2018, in an email exchange with Clinton Creasy (male), Executive Director, Legal and Regulatory Affairs, I requested and received a copy of the EEOC Charge that Hernandez had filed against Respondent, based on race discrimination and retaliation.

[29]      On or about May 24, 2018, in a meeting with Creasy, following the above email exchange, I complained of sex discrimination, including sexual assault, in connection with Hernandez. Creasy instructed me to speak with Teresa Ford (female), Senior Human Resources Generalist.

[30]      On June 3, 2018, in a meeting with Ford, I complained of sex discrimination, including sexual assault, in connection with Hernandez. I asked Ford to check my file for documentation regarding my prior sex discrimination, including sexual assault, complaints in connection with Hernandez. I stated that I had met with Flasinski in October 2014 regarding this issue. Ford stated that she would get back to me.

[31]      On June 4, 2018, in a meeting with Ford, she stated that there was no documentation in my file referencing sex discrimination, including sexual assault, complaints or anything related to Hernandez. I was upset, and asked Ford to continue looking for this

documentation and also to look in REDACTED 's file because I was aware that she had complained of Hernandez's conduct.

[32] On June 5, 2018, in a meeting with Ford and Kimberly Love (female), Vice President of Human Resources, I was told that Respondent had no record of my sex discrimination, including sexual assault, complaints. Love stated there was no record or documentation of any complaints being filed against anyone at Respondent. I expressed that I was upset by this. I was then asked to give my statement again about sexual assault by Hernandez. I did so, and asked them to also speak with REDACTED

[33] On June 6, 2018, in a meeting with Respondent's outside counsel, I answered questions regarding my sex discrimination, including sexual assault, complaints in connection with Hernandez.

[34] Respondent, to my knowledge, failed to investigate my sex discrimination, including sexual assault, complaints.

[35] Respondent failed to remedy or prevent the sex discrimination, including sexual assault, to which I have been subjected.

[36] I continued to go to work each day at Respondent faced with the upsetting reality that I had complained of sex discrimination, including sexual assault, and Respondent took no action to investigate, remedy, or prevent the sex discrimination, including sexual assault, to which I was subjected at Respondent.

[37] On or about May 1, 2018, I began reporting to Aumiller.

[38] The following employees, in addition to me, directly reported to Aumiller and were located in the Wayne office: Joseph McCusker (male), Project Manager, Technical Delivery; Michael McAllister (male), Associate Director; Heather DiPietrantonio (female),

Associate Director, Technical Delivery; Chuck Sirirathasuk (male), Manager Software

Development; Dave Phillips (male), Associate Director, Technical Delivery; Paul Marker (male),

Associate Director, Technical Delivery; Brent Vollrath (male), Product Developer; Joe Cropper

(male), Senior Manager Fulfillment and Logistics. I was qualified, if not more qualified, to

perform many of these employees' positions.

[39]      In or about June 2018, Aumiller assigned increased job duties and

responsibilities to McCusker.

[40]      I was more qualified and experienced to handle increased job duties and

responsibilities than McCusker.

[41]      I was not assigned increased job duties and responsibilities because of my

sex.

[42]      Aumiller treats male employees better, and in a more preferential manner,

than Respondent treats me.

[43]      Aumiller has treated me differently, and worse—and in a more hostile and

dismissive manner—than Aumiller has treated male employees.

[44]      Aumiller ignores and excludes me while deferring to and recognizing the

input of male employees over me.

[45]      Aumiller seeks out, assigns tasks to, and provides information to male

employees over me.

[46]      Aumiller has referred to me as a "chic."

[47]      Aumiller stated to me: "Have you ever read the book 'Nice Girls Don't

Get the Corner Office?' You should, it applies to you." I understood this comment to be

evidence of a sex bias.

[48]     Coworkers have told me that they believe that Aumiller treats me less favorably because I am a woman.

[49]     On or about November 29, 2018, following a meeting with Aumiller, McCusker, and Jonathen Rajabi (male), Clinical Data Management SQL Programmer, Rajabi told me that he believed that Aumiller treated me less favorably because I am a woman.

[50]     On multiple occasions, Jeffery Taylor (male), Clinical Data Manager, and I have discussed our belief that Aumiller is biased against female employees.

[51]     On multiple occasions, Jordan Mark Barbone (male), Clinical Data Scientist, and I have discussed our belief that Aumiller is biased against female employees.

[52]     On multiple occasions, Elizabeth Renne (female), Project Manager, and I have discussed our belief that Aumiller is biased against female employees.

[53]     On multiple occasions, Marie Boursiquot (female), Clinical Data Manager, and I have discussed our belief that Aumiller is biased against us based on our sex.

[54]     I complained to Holly Gratkowski (female), Director, Client Services, that I believed that Aumiller is biased against me because I am female, and she told me that she believed that Aumiller was dismissive of me because I am female.

[55]     In or about December 2018, Respondent failed to promote me to Associate Director. I had no opportunity to apply for the position because the position was not posted. If the position was posted, I would have applied for it.

[56]     Instead of promoting me, Respondent promoted McCusker (male) to Associate Director.

[57]     I was more qualified and experienced for the Associate Director position than McCusker.  I had longer service time on the Data Management Team and at Respondent than McCusker had.  I had more experience with Clinical Data Management than McCusker.

[58]     Respondent failed to promote me to Associate Director because of my sex.

[59]     In or about late December 2018, I noticed that Respondent's organizational chart showed that I reported to McCusker, and that my direct reports also reported to McCusker.  When I asked why the organizational chart showed this, I received no answer.

[60]     In or about January 2019, I was excluded from the interviewing and hiring process of Wei Zhou (male), Clinical Data Manager, who was assigned to report to me.

[61]     I received no explanation as to why I was excluded from the interviewing and hiring process for my direct report.

[62]     I was excluded from the interviewing and hiring process for my direct report because of my sex.

[63]     On February 7, 2019, in a meeting with Aumiller, Aumiller was hostile and aggressive toward me.  Aumiller instructed me to take over managing an additional team, since Christopher Dunn (male), Director of Data Sciences, had resigned.  I complained that Dunn (male) had been paid substantially more than I was being paid.  I stated that I was being paid less than Dunn was paid despite my increased job duties and responsibilities.  Aumiller became visibly angry, and increasingly hostile and aggressive toward me.  Aumiller stated that I "better watch what [I] say."  Aumiller unjustly criticized my performance and yelled at me for doing work that I was assigned to complete.  Aumiller stated that maybe this position was too much for me, and stated that he has demoted people in the past.  Aumiller raised his voice at me during the

meeting, and interacted with me in a threatening and intimidating manner.  I have not seen

Aumiller treat a male employee in the same hostile and aggressive manner as he treated me.

[64]     On February 8, 2019, in a meeting with Colleen Meanix (female),

Associate Director of Human Resources, I complained of sex discrimination.  I complained of

Aumiller's hostile and threatening interactions with me.

[65]     On February 12, 2019, in a meeting with Ford, I filed an internal sex

discrimination complaint against Aumiller.  I complained that I felt my contributions were not

valued because I am female.  I complained that I felt like I have been treated unfairly and worse

for quite some time because I am a woman.  I complained that I have had coworkers tell me that

they also believe that Aumiller treats me less favorably because I am a woman.  I complained

that Aumiller did not promote me, and instead promoted McCusker, because of my sex.  I

provided specific examples, many of which are included in this Complaint.

[66]     On February 21, 2019, I contacted Ford for an update regarding my

complaint.

[67]     I received no response.

[68]     On February 25, 2019, I contacted Ford again for an update regarding my

complaint.

[69]     Ford responded that she was busy and not able to speak with me.

[70]     On March 5, 2019, I contacted Ford for an update regarding my

complaint. Later that day, I met with Ford.  She stated that she had not been able to look into my

complaint. Ford told me that she was leaving Respondent, and that Milissa Ronayne (female),

Director, Management Development and Tools, would be handling my complaint going forward.

[71]     In or about the end of March 2019, Aumiller told me he was going to give me a low performance rating, which would impact my merit increase. My performance did not warrant a low rating.

[72]     On or about March 19, 2019, I contacted Ronayne for an update regarding my complaint. Ronayne stated that John T. Clements (male), Senior Human Resources Generalist, would be handling my complaint going forward.

[73]     On numerous occasions, beginning on or about March 19, 2019, I contacted Clements regarding the status of my complaint. He stated that he had been busy and had not gotten a chance to look at my complaint or investigate my allegations. I complained of sex discrimination to Clements. I complained that I was continuing to feel threatened and intimidated by Aumiller.

[74]     Respondent, to my knowledge, failed to investigate my sex discrimination complaints.

[75]     Respondent failed to remedy or prevent the sex discrimination to which I have been subjected.

[76]     As a result of the sex discrimination, including sexual assault, to which I have been subjected at Respondent, I have been forced to take a medical leave of absence.

[77]     On May 10, 2019, I went out of work on a medical leave of absence.

[78]     I remain on a medical leave of absence.

[79]     On June 19, 2019, in a phone call with Ronayne, I was told that Clements would be transitioning into a new position and a new member of the Human Resources team, Melanie Smith (female), Talent Business Partner, would be the Human Resources point of contact for my team at Respondent.

[80]     On June 24, 2019, in an email from Clements, he told me that his position was changing and that Respondent would "work to steer me in the right direction when [I] return" to Respondent.

[81]     I have not received any further communication from Respondent regarding my sex discrimination, including sexual assault, complaints.

[82]     I continue to be faced with the upsetting reality that I had complained of sex discrimination, including sexual assault, and Respondent took no action to investigate, remedy, or prevent the sex discrimination, including sexual assault, to which I was subjected at Respondent.

[83]     Respondent has subjected me to a hostile work environment because of my sex.

[84]     Respondent's sex discriminatory conduct, including its failure to investigate, remedy, or prevent the sex discrimination, including sexual assault, to which I was subjected and about which I had repeatedly complained, constitutes a continuing violation going back to at least June 28, 2013.

[85]     Respondent's sex discriminatory conduct toward me has caused me emotional distress, for which I am and have been receiving treatment.

[86]     Respondent has an underrepresentation of female employees in high-level positions.

[87]     Respondent's Scientific Leadership is comprised of eight (8) male employees and one (1) female employee.

[88]     Respondent's Corporate Leadership is comprised of eight (8) male employees and four (4) female employees.

[89]      Respondent's comments and conduct evidence a bias against female employees.

B.  Based on the aforementioned, I allege that Respondent has discriminated against me because of my sex (female), in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq.* ("PHRA"), and the Philadelphia Fair Practices Ordinance, Phila. Code § 9-1101, *et seq.* ("PFPO").

4.      The allegations in Paragraph 3 hereof constitute unlawful discriminatory practices in violation of:

__X__      **Pennsylvania Human Relations Act (Act of October 27, 1955, P.L. 744, as amended) Section 5 Subsection(s): __(a)__**

_____      Section 5.1 Subsection(s) _____

_____      Section 5.2 Subsection(s) _____

_____      Pennsylvania Fair Educational Opportunities Act (Act of July 17, 1961, P.L. 766, as amended) Section 4 Subsection(s) _____

5.      Other action based upon the aforesaid allegations has been instituted by the Complainant in any court or before any other commission within the Commonwealth of Pennsylvania as follows:

__X__      **This charge will be referred to the EEOC for the purpose of dual filing.**

6.      The Complainant seeks that Respondent be required to:

(a) Make the Complainant whole.

(b) Eliminate all unlawful discriminatory practice(s) and procedure(s).

(c) Remedy the discriminatory effect of past practice(s) and procedure(s).

(d) Take further affirmative action necessary and appropriate to remedy the violation complained of herein.

(e) Provide such further relief as the Commission deems necessary and appropriate.

## VERIFICATION

I hereby verify that the statements contained in this complaint are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 P.A.C.A. Section 4904, relating to unsworn falsification to authorities.

24-July-2019
(Date Signed)

(Signature)       Gretchen Friedberger
                  1335 Doe Run Road
                  Coatesville, PA 19320

# EXHIBIT B

EEOC Form 161-B (11/16)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

To: **Gretchen Friedberger**
~~REDACTED~~
**Coatesville, PA 19320**

From: **Philadelphia District Office**
**801 Market Street**
**Suite 1000**
**Philadelphia, PA 19107**

[ ] *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **17F-2020-60275** | **Kurt Jung,**<br>**State, Local and Tribal Program Manager** | **(267) 589-9749** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge.  It has been issued at your request.  Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court** <u>WITHIN 90 DAYS</u> **of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

[X] More than 180 days have passed since the filing of this charge.

[ ] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge.  In this regard, **the paragraph marked below applies to your case:**

[ ] The EEOC is closing your case.  Therefore, your lawsuit under the ADEA **must be filed in federal or state court** <u>WITHIN 90 DAYS</u> **of your receipt of this Notice.**  Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case.  However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):**  You already have the right to sue under the EPA (filing an EEOC charge is not required.)  EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred** <u>more than 2 years (3 years)</u> before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

**Jamie R. Williamson,**
**District Director**

3/3/2021

*(Date Mailed)*

Enclosures(s)

cc:     **Lane Schiff Esq.**
        **(Charging Party Attorney)**

        **Signant Health**
        **Christina M. Michael Esq.**
        **(Respondent Attorney)**

cc:    ***(Sent by e-mail only: schiff@consolelaw.com; cmichael@fisherphillips.com)***

**Lane Schiff Esq.**
**Console Mattiacci Law**
**1525 Locust Street**
**Philadelphia, PA 19102**
**schiff@consolelaw.com**


**Christina M. Michael Esq.**
**Fisher & Phillips, LLP**
**Two Logan Square**
**Philadelphia, PA 19104**
**cmichael@fisherphillips.com**